Carl and Mary Sue McLAUGHLIN, individually and on behalf of their daughter, Emma McLaughlin, a minor, Plaintiffs,

v.

BOARD OF EDUCATION OF HOLT PUBLIC SCHOOLS, Tom Davis, Tom West, Board of Education of East Lansing Public Schools, Thomas Giblin, Phyllis Pietka, Ingham Intermediate School Board, Michigan State Board of Education, and Arthur E. Ellis, Defendants.

No. 1:00–CV–69.

United States District Court, W.D. Michigan, Southern Division.

March 12, 2001.

Myra Dutton–Johnson, Muskegon, Jason D. Kolkema, Lansing, MI, for Plaintiff.

James S. Jamo, William R. Schulz, Lansing, MI, for Defendant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

### I.  OVERVIEW

This action grows out of plaintiffs Carl and Mary Sue McLaughlin's dissatisfaction with the April 1999, individualized education program ("IEP") formulated by defendant Board of Education of Holt Public Schools ("Holt") for their daughter, Emma McLaughlin.  Emma is presently eight years old.  She has Down's Syndrome. Pursuant to the IEP, Emma was to attend school approximately seven miles from her home, in a half-day regular kindergarten classroom, and receive special education services in a categorical classroom in the afternoon.  In essence, plaintiffs claim they are entitled to have Emma educated in their neighborhood public school in a general education setting.  Because the Holt IEP did not comport with their wishes, they sought administrative review. The Holt IEP was upheld both by local and state level hearing officers.  This action followed.

In the meantime, plaintiffs enrolled Emma in a general education kindergarten classroom within the East Lansing School District in the Fall of 1999.  By December 1999, defendant Board of Education of East Lansing Public Schools ("East Lansing") had formulated an IEP generally consistent with the Holt IEP.  Plaintiffs then sought administrative review of the East Lansing IEP and amended their complaint in this matter so as to incorporate claims involving East Lansing as well.

Named as defendants in the first amended complaint are:  Board of Education of Holt Public Schools;  Tom Davis, Superintendent of Holt Public Schools; Tom West, Director of Special Education for Holt Public Schools;  Board of Education of East Lansing Public Schools; Thomas Giblin, Superintendent of East Lansing Public Schools;  Phyllis Pietka, Director of Special Education for East Lansing Public Schools;  Ingham Intermediate School Board;  Michigan State Board of Education;  and Arthur E. Ellis, Superintendent of Public Instruction for Michigan Department of Education.  The complaint contains seven counts:

| | | |
|---|---|---|
| Count One | - | Violation of the Individuals with Disabilities Education Act |
| Count Two | - | Violation of the integration mandates of the Americans with Disabilities Act |
| Count Three | - | Violation of § 504 of the Rehabilitation Act |
| Count Four | - | Violation of the equal educational opportunity provisions of Michigan's Persons with Disabilities Civil Rights Act |
| Count Five | - | Violation of the Michigan Mandatory Special Education Act |
| Count Six | - | Violation of 42 U.S.C. §§ 1983 and 1985 (deprivation of federally protected civil rights under color of state law) |

Count Seven     -     Violation of 42 U.S.C. § 1986 (failure to prevent conspiracy to deny federally protected civil rights)

---

All claims against defendants Michigan Board of Education and Arthur E. Ellis were dismissed per stipulation on April 28, 2000. All claims against Ingham Intermediate School Board were dismissed per stipulation on June 30, 2000.

On June 28, 2000, following a due process hearing, a local hearing officer upheld the East Lansing IEP. On August 7, 2000, the day before trial commenced in this case, a decision was rendered by the state hearing review officer, reversing the local hearing officer's decision. This ruling essentially awarded plaintiffs the relief they sought, ordering East Lansing to provide Emma a full-day placement in a general education setting, and essentially mooted plaintiffs' present claims against East Lansing. East Lansing thereupon filed its counterclaim, asking this Court, pursuant to the Individuals with Disabilities Education Act, to reverse the state hearing review officer's decision. The parties agreed that the Court's review of East Lansing's counterclaim would be based on the record submitted by plaintiffs in support of their IDEA claim.

Trial in this matter commenced on August 8, 2000. On August 9th, plaintiffs voluntarily withdrew all claims asserted in their first amended complaint, with the exception of their count one claim for relief under the Individuals with Disabilities Education Act. On August 10th, after two days of trial, which entailed review of the administrative record of the Holt proceedings and presentation of limited additional evidence, the Court issued a bench ruling in favor of plaintiffs with respect to the Holt IEP. This opinion memorializes the Court's bench ruling and more completely embodies the Court's findings of fact and conclusions of law.

This opinion also includes the Court's ruling on East Lansing's counterclaim for review, on the existing record, of the state hearing review officer's decision in the East Lansing matter.

## II. IDEA FRAMEWORK

The remaining claims before the Court, both by plaintiffs and counterclaimant Board of Education of East Lansing Public Schools, are brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Pursuant to the IDEA, states receiving federal funding thereunder must provide a "free appropriate public education" to all children who are disabled and in need of special education services. 20 U.S.C. § 1412(a)(1)(A). In furtherance of this purpose, local school districts are required to establish an IEP for each child with a disability. 20 U.S.C. § 1412(a)(4). The IEP is a written statement that includes, among other things, a statement of the child's present levels of educational performance; a statement of measurable annual goals, including benchmarks or short-term objectives; a statement of special education services to be provided to the child; and an explanation of the extent to which the child will not participate with non-disabled children. 20 U.S.C. § 1414(d)(1)(A). The IEP is developed by the "IEP Team," composed, at a minimum, of the child's parents, at least one regular education teacher, at least one special education teacher, and a representative of the local school district who is qualified to provide special education services. 20 U.S.C. § 1414(d)(1)(B). The IEP Team is required to review each child's IEP at least annually and revise it as appropriate. 20 U.S.C. § 1414(d)(4).

Educational placement decisions are based on the IEP. The IDEA mandates that children with disabilities be educated in the least restrictive environment. 20 U.S.C. § 1412(a)(5). That is, children with disabilities are to be educated, "to the maximum extent appropriate," with children who are not disabled. *Id.* Special

classes or separate schooling may occur "only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.*

The "free appropriate public education" that the IDEA mandates must also meet the standards of the governing state educational agency. 20 U.S.C. § 1401(8). This means, with reference to Michigan law, that local school districts must "provide special education programs and services designed to develop the maximum potential of each handicapped person." M.C.L. § 380.1751(1); *Burilovich v. Board of Educ. of Lincoln Consolidated Schools,* 208 F.3d 560, 565 (6th Cir.2000)(recognizing incorporation of the Michigan standard into the IDEA); *Dong v. Board of Educ. of Rochester Schools,* 197 F.3d 793, 800 (6th Cir.1999) (same).

Under the IDEA, parents of a child with a disability may present complaints concerning the appropriateness of an IEP to the local school district. 20 U.S.C. § 1415(b). If the complaint is not otherwise resolved, the parents are entitled to a due process hearing before an impartial local hearing officer. 20 U.S.C. § 1415(f). Any party aggrieved by the decision of the local hearing officer may appeal the decision to a state hearing review officer. 20 U.S.C. § 1415(g). Any party aggrieved by the decision of the state hearing review officer may bring a civil action in a state court of competent jurisdiction or in a United States District Court. 20 U.S.C. § 1415(i)(2).

The reviewing court shall receive the records of the administrative proceedings, hear additional evidence at the request of a party and determine whether relief is appropriate based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B). The reviewing court must make a twofold inquiry, determining first whether IDEA procedures have been followed; and second, whether the IEP is reasonably calculated to enable the child to receive education benefits. *Knable v. Bexley City School District,* 238 F.3d 755, 764 (6th Cir.2001). The governing standard of review, "modified de novo review," is defined as follows:

[I]nitial reviewing courts should make "independent decisions" based on the preponderance of the evidence, but also should give "due weight" to the determinations made during the state administrative process.... Although reviewing courts must not "simply adopt the state administrative findings without an independent re-examination of the evidence," .... neither may they "substitute their own notions of sound educational policy for those of the school authorities which they review."

*Id.* (citations omitted). The Sixth Circuit has observed that "federal courts are generalists with no expertise in the educational needs of handicapped children and will benefit from the factfinding of a state agency, which is presumed to have expertise in the field." *Burilovich,* 208 F.3d at 566. The amount of deference due thus depends on the extent to which educational expertise is relevant to the administrative findings. *Id.* at 567.

## III. PLAINTIFFS' CLAIMS

In the claim that survived for trial in this Court, plaintiffs challenge the state hearing review officer's determination that the IDEA procedural safeguards were properly observed in the Holt IEP proceedings. They also challenge his conclusion that Emma's proposed placement at a more distant elementary school (rather than her neighborhood school), in a program that featured provision of special education instruction in a TMI categorical classroom (rather than a resource room), is consistent with the IDEA's "least restrictive environment" requirement.

With respect to the East Lansing IEP and related proceedings, plaintiffs had been similarly aggrieved until the state hearing review officer rendered his August 7, 2000 decision. His determination that the IDEA "free appropriate public edu-

cation" and "least restrictive environment" requirements required East Lansing to place Emma in a full-day general education classroom essentially mooted their IDEA claims against East Lansing. In its counterclaim, however, East Lansing contends the state hearing review officer's decision should be vacated because he failed to give proper weight to, or even address, the Michigan law requirement that the IEP be designed to develop Emma's "maximum potential." East Lansing urges the Court to adopt the reasoning of the local hearing officer, who found that the IEP proposed placement afforded Emma a free appropriate public education and was designed to maximize her potential.

## IV. PROCEDURAL HISTORY/ FINDINGS OF FACT [1]

1. Plaintiffs' daughter Emma McLaughlin is a minor, born on December 12, 1992. Shortly after her birth, Emma was diagnosed with a condition commonly referred to as Down's Syndrome. Emma is a "child with a disability" as defined in the Individuals with Disabilities Education Act. Emma has received special education services since the time she was about two months old. Since January 12, 1996, Emma has been eligible for special education services as a child who is educable mentally impaired ("EMI").

2. Emma lives with her parents, Carl and Mary Sue McLaughlin, at 532 Jefferson Street, in Dimondale, Michigan. At all times in this matter, she has resided within the Holt Public School District.

3. Defendant Holt Public Schools operates six elementary schools within its district including: Dimondale Elementary, Elliot Elementary, Horizon Elementary, Midway Elementary, Sycamore Elementary, and Wilcox Elementary. Dimondale Elementary is the closest elementary school to Emma's home and the school she would normally attend if not disabled.

4. In January of 1996, an IEP was designed for Emma by defendant Holt. As a result of that IEP, Emma was placed in a pre-primary impaired classroom at Elliott Elementary, which is now housed at Dimondale Elementary. The IEP also called for the provision of speech and language services.

5. In June 1996, an IEP Team meeting was convened by defendant Holt to develop Emma's educational plan for the 1996–97 school year. Emma's parents felt that her educational needs were not being met in the pre-primary impaired classroom and declined continued placement in that setting. They opted instead to enroll Emma at their own expense in the Child Development Lab School operated by Michigan State University ("MSU Lab School") in East Lansing. Defendant Holt continued to provide speech and language services to Emma at Dimondale Elementary.

6. In June 1997, an IEP Team meeting was convened by Holt to develop Emma's educational plan for the 1997–98 school year. Plaintiffs chose to continue Emma's attendance at the MSU Lab School. Defendant Holt continued to provide speech and language services, and began to provide Emma with adaptive physical education as well, at Dimondale Elementary.

7. On May 11, 1998, an IEP Team meeting was convened by defendant Holt to develop Emma's IEP for the 1998–1999 school year. The meeting was adjourned before a placement decision was reached.

8. On June 5, 1998, the IEP was completed and delivered to the plaintiffs, giving them notice of Holt's intention to place Emma in a regular education kindergarten classroom at Sycamore Elementary for three hours a day, with ancillary and other related services. The IEP also provided for supplementary aids and services, consisting of paraprofessional support for the regular education classroom and teacher consultant services. The IEP was accom-

---

**1.** Findings of fact proposed by the parties but not included below have been deliberately omitted because the Court found them to be either not supported by the evidence or not relevant to the ultimate issues.

panied by a memorandum from defendant Tom West explaining that this placement decision was made because support for Emma's program was available at Sycamore Elementary. Yet, the IEP did not require Emma to spend any time in special education, and West explained that Emma's participation in the categorical classroom for trainable mentally impaired ("TMI") students was optional.

9. On June 5, 1998, Emma's parents requested a due process hearing, insisting that Emma should be placed at her local neighborhood school, Dimondale Elementary, where she would attend if nondisabled, and the least restrictive environment in which she could be appropriately educated. In the meantime, plaintiffs chose to continue Emma's attendance at the MSU Lab School at their own expense and Holt continued to provide Emma with speech and language services, adaptive physical education as well as occupational therapy, at Dimondale Elementary.

10. Local Hearing Officer Lynwood Beekman presided over the due process hearing process. While the due process hearing was pending, it became necessary for Emma to be provided with a three-year comprehensive evaluation by a Multidisciplinary Evaluation Team ("MET"). Pursuant to R. 340.1722d of the Michigan Revised Administrative Rules for Special Education, such an evaluation is required every 36 months, the results of which are to be presented at an IEP Team meeting. The hearing dates were thus extended so that the parties could complete these tasks. The parties ultimately agreed that the parents' disagreement with the May 11, 1998 IEP would be subsumed in any request for a due process hearing arising out of the following year's IEP.

11. On April 21 and 23, 1999, an MET and IEP Team meeting was convened to develop Emma's educational plan for the remaining portion of the 1998–99 school year, and the beginning of the 1999–2000 school year. At these meetings, the IEP Team agreed on goals and objectives for Emma and further agreed that Emma's program would consist of full-day instruction. Specifically, the parties agreed that Emma would participate in a regular education kindergarten classroom with paraprofessional support for half of the day and receive special education instruction, including all ancillary and related services, for the remainder of the day. The parties disagreed with regard to the special education classroom and location of Emma's placement. Holt proposed that Emma be placed at Sycamore Elementary both for general education kindergarten instruction and for special education in the TMI categorical classroom. Plaintiffs maintained that Emma should be placed at Dimondale Elementary and her special education instruction, beyond the times allocated for ancillary and other related services, should be delivered within the elementary level resource room at Dimondale Elementary.

12. On April 29, 1999, plaintiffs requested a due process hearing. Plaintiffs again raised issues relating to the failure of the IEP to place Emma within the least restrictive environment at her neighborhood school.

13. Hearing Officer Beekman continued to preside over the administrative due process hearing. The parties agreed that the scope of the due process hearing was limited to three issues: (1) the appropriateness of the resource room proposed by plaintiffs, as opposed to the TMI categorical classroom proposed by defendant Holt; (2) the assignment of the burden of proof in light of alleged procedural defects in the Holt IEP proceedings; and (3) a determination of Emma's "stay put" placement during the pendency of all administrative and judicial proceedings pursuant to 20 U.S.C. § 1415(j).

14. The due process hearing was held on May 19 and 25, 1999. The plaintiffs limited their proofs to issues relating to the April 1999 IEP. In his decision dated July 22, 1999, Hearing Officer Beekman ruled in favor of defendant Holt and ordered that Emma be placed at Sycamore Elementary and participate in the TMI

categorical classroom there. Hearing Officer Beekman also ruled that this placement should constitute Emma's stay put placement during the pendency of all administrative and judicial proceedings. Finding it unnecessary to do so, Hearing Officer Beekman refrained from ruling on the burden of proof question.

15. On August 12, 1999, plaintiffs filed a timely appeal with the Michigan Department of Education. Holt did not file a cross-appeal.

16. State Hearing Review Officer William Sosnowsky was appointed to preside over the administrative appeal. In his decision and order dated September 25, 1999, Review Officer Sosnowsky upheld the decision of Hearing Officer Beekman, providing that Emma was to participate in the TMI categorical classroom at Sycamore Elementary. He concluded, however, that Hearing Officer Beekman had erred in his determination that Sycamore Elementary constituted Emma's stay put placement and ruled that Emma be placed at the MSU Lab School during the pendency of all judicial proceedings. On January 28, 2000, plaintiffs filed their complaint in this action against defendant Holt, asserting a claim, *inter alia*, for violation of the Individuals with Disabilities Education Act.

17. In the meantime, plaintiffs had submitted a "school of choice" application for the enrollment of Emma for the 1999–2000 school year at Spartan Village Elementary School, which is operated by defendant East Lansing Public Schools. The application was accepted and on September 20, 1999, Emma began attending full-day kindergarten at Spartan Village Elementary.

18. On October 29, 1999, November 19, 1999, and December 17, 1999, an IEP Team meeting was convened by East Lansing to develop Emma's educational plan. Plaintiffs proposed that Emma continue in her placement at the full-day kindergarten classroom at Spartan Village Elementary. Defendant East Lansing determined that Emma should participate in a half-day regular education kindergarten classroom with the support of a half-day basic classroom at Pinecrest Elementary. In East Lansing, a "basic classroom" is a classroom for students who require 50 percent of their instructional school day in a special education program.

19. On December 22, 1999, plaintiffs requested a due process hearing. During the course of the administrative proceedings, Emma's placement at Spartan Village Elementary was continued for the remainder of the 1999–2000 school year, pursuant to this Court's March 20, 2000 preliminary injunction order. On June 28, 2000, Local Hearing Officer James Flaggert issued his decision upholding the East Lansing IEP. Hearing Officer Flaggert concluded that the proposed placement, split between the general education kindergarten classroom and the basic classroom, represented the least restrictive environment in which Emma could be successfully educated and enabled to meet here maximum potential.

20. Plaintiffs timely appealed. On August 7, 2000, State Hearing Review Officer Sidney Kraizman issued his decision, overruling Hearing Officer Flaggert's decision, and concluding that Emma can be satisfactorily provided with a free appropriate public education in the least restrictive environment through a full-day placement in a general education classroom. Review Officer Kraizman ordered that Emma be provided with full-time para-professional support and that a teacher consultant provide special education services to Emma in the general education classroom one hour a day, five days a week. Counterclaimant East Lansing has timely challenged Review Officer Kraizman's decision as violative of the IDEA.

21. On August 10, 2000, at the conclusion of trial on plaintiffs' IDEA claim challenging Review Officer Sosnowsky's decision upholding the Holt IEP, the Court issued its bench ruling in favor of the plaintiffs. The Court concluded that, under the circumstances, the IDEA required that Emma be placed at Dimondale Elementary with provision of special education services in the elementary level re-

source room. Consistent with this bench ruling, Emma was enrolled at Dimondale Elementary in the fall of 2000, where she has continued to receive needed regular and special education services to the present time.

## V. CONCLUSIONS OF LAW

### A. Holt Proceedings

#### 1. *Procedural Defects*

■ Plaintiffs complain of procedural irregularities in the proceedings which led to formulation of the April 1999 IEP. In particular, plaintiffs contend they were denied their rights to participate in the IEP Team and to have their concerns regarding Emma's placement fully considered, in violation of 20 U.S.C. §§ 1414(d)(1)(B)(i), 1414(d)(3)(A)(i), and 1414(f).

This claim grows out of events occurring in May and June 1998. The IEP Team meeting convened on May 11, 1998 did not yield a completed IEP. The meeting was adjourned before a placement decision was reached. Then, on June 5, 1998, although the meeting had not been reconvened, a completed IEP was delivered to plaintiffs, which included a proposed placement for Emma at odds with plaintiffs' expressed preference. Plaintiffs requested a due process hearing to contest the May–June 1998 IEP, but when Emma's multidisciplinary evaluation intervened, they agreed that their grievances would be subsumed in any subsequent challenge to Emma's next annual IEP.

In effect, then, plaintiffs waived their right to complain of these procedural irregularities in connection with the 1998 IEP. Further, there is no evidence suggesting that the April 1999 IEP was marred by any similar alleged procedural defects, as plaintiffs appear to have had a full and fair opportunity to participate and make their wishes known. The Court thus concurs in Review Officer Sosnowsky's determination that plaintiffs' assertions of procedural violations are unfounded. Sosnowsky Decision and Order, 9/25/99, p. 28.

■ Plaintiffs also contend that defendant Holt did not observe a procedural requirement of state law in formulating the April 1999 IEP. The IEP proposal that Emma, who is classified as "educable mentally impaired," or "EMI," receive special education services in a TMI categorical classroom, for "trainable mentally impaired" students, is said to constitute a cross-categorical placement. Under Michigan law, plaintiffs contend, such a cross-categorical placement can be made over the parents' objection only after the school district has sought a due process hearing and justified such a placement. Michigan Administrative Code, R. 340.1724–1724b. To the extent defendant Holt did not comply with this requirement, plaintiffs contend the violation is cognizable as a violation of the IDEA, because the "free appropriate public education" mandated by the IDEA requires "special education and related services that meet the standards of the State educational agency." 20 U.S.C. § 1401(8). Further, plaintiffs contend this was no mere technical violation because it relieved defendant Holt of the burden of proof.

Local Hearing Officer Beekman sidestepped this issue, concluding that irrespective of which party had the burden of proof, and without giving deference to the IEP, it had been satisfactorily established in the record that the April 1999 IEP was designed to afford Emma a free appropriate public education. Beekman Decision and Order, 7/22/99, pp. 23–24. Review Officer Sosnowsky approached the issue differently. He determined that Hearing Officer Beekman erred by failing to assign the burden of proof. Sosnowsky Decision and Order, 9/25/99, pp. 30–31. He further held that the party challenging the terms of an IEP bears the burden of proving by a preponderance of the evidence that the IEP is the product of defective procedure or is substantively inappropriate. *Id.*

Both hearing officers are right. Yes, plaintiffs, as the party challenging the

terms of an IEP, clearly had and have the burden of proving a violation of the IDEA. *Dong*, 197 F.3d at 799–800; *Doe v. Board of Educ. of Tullahoma City Schools*, 9 F.3d 455, 458 (6th Cir.1993). And yes, even assuming plaintiffs have demonstrated that Holt violated a state law procedural requirement, which can be deemed to make out a failure to follow IDEA procedures (because the state procedural safeguards are mandated by the IDEA, *see* 20 U.S.C. § 1415); it nonetheless remains true, under the circumstances of this case, that initial allocation of the burden concerning the appropriateness of Emma's proposed placement was not and is not determinative.

The present record clearly demonstrates that all parties have had abundant opportunity to state their positions, explain them, and present evidence to support them. This record is not marked by irreconcilable factual or evidentiary disputes. It is rather, as discussed below, the evaluation of the largely undisputed facts under the governing law that dictates the outcome. Given this understanding, it is apparent that any violation of a state law burden allocation requirement did not result in the sort of "substantive harm" that is necessary to warrant relief under the IDEA. *See Knable*, 238 F.3d at 764 ("Only if we find that a procedural violation has resulted in such substantive harm, and thus constituted a denial of [the] right to a FAPE [free appropriate public education], may we 'grant such relief as the court determines is appropriate.'"); *Dong*, 197 F.3d at 800 (stating that technical procedural deviations do not render an IEP invalid).

Accordingly, plaintiffs have failed to show they suffered substantive harm as a result of the alleged procedural violation. Their claim of procedural error is therefore rejected.

**2.** A "resource room" is designed for students who need to spend 50% or less of their instructional school day in special education. A "TMI categorical classroom" or "basic class-

### 2. *Substantive Issues*

The substantive issues posed by this action in relation to proceedings in both school districts with which the local hearing officers and state review officers conscientiously wrestled, and on which their decisions turned, can be summed up in one question: In determining whether an IEP affords a free appropriate public education, how is the IDEA "least restrictive environment" requirement to be reconciled or balanced with the Michigan law "maximum potential" requirement?

From the beginning, plaintiffs have insisted that Emma should be placed at her neighborhood school; that she should be included in the general education setting as much as possible; and that, to the extent it is necessary to provide certain special education services separately, they should be provided in a resource room, rather than a TMI categorical classroom or basic classroom.[2] Plaintiffs have consistently maintained that the neighborhood school represents a less restrictive environment than a distant school, and that a resource room is less restrictive than a categorical or basic classroom.

The April 1999 IEP included proposed placement of Emma at Sycamore Elementary, some seven miles from her home, where, Holt maintains, in addition to a half-day of instruction in a general education classroom, special education services could be more effectively provided to Emma in a categorical classroom. A categorical classroom is not available at Emma's neighborhood school, Dimondale Elementary.

Hearing Officer Beekman identified the dispositive question to be whether a categorical classroom was necessary to address Emma's individual needs. Beekman Decision and Order, 7/22/99, p. 19. If not, he observed, Holt recognized that placement at Dimondale Elementary would be appro-

room" is designed for students who are permitted to spend more than 50% of their instructional day in special education.

priate. *Id.* Hearing Officer Beekman thus determined that "least restrictive environment" was not in dispute. That is, both sides agreed, in the abstract, that Dimondale Elementary represented the least restrictive environment. However, instead of then inquiring whether Emma's right to a free appropriate public education could be afforded at Dimondale, Hearing Officer Beekman engaged in a qualitative comparison of the two settings, i.e., the resource room and the categorical classroom. He went on to conclude that the array of programs and services afforded in the categorical classroom would allow Emma "to learn more successfully," "to achieve her IEP goals more quickly and completely," and "to develop her maximum potential." *Id.* at pp. 22–23.

On appeal, Review Officer Sosnowsky gave nominal consideration to the least restrictive environment requirement, quoting at length from *Hudson v. Bloomfield Hills Public Schools,* 910 F.Supp. 1291, 1302–04 (E.D.Mich.1995). Sosnowsky Decision and Order dated 9/25/99, pp. 32–35. He thus acknowledged, based on the IDEA least restrictive environment requirement and accompanying regulations, as applied in decisions of the Sixth, Fourth, Eighth and Tenth Circuit Courts of Appeals, that "a child with a disability should be educated in the school that would be attended if the child were not disabled [i.e., the neighborhood school], unless the child's IEP requires placement elsewhere." *Id.* at 35. That is, Review Officer Sosnowsky impliedly recognized that the IDEA creates a non-mandatory presumption in favor of placement at the student's neighborhood school unless the presumption is overcome by other considerations which *require* placement elsewhere. Yet, even after adopting this standard, though he proceeded to affirm Hearing Officer Beekman's decision upholding the IEP, he did not expressly conclude that Emma's needs, as identified in the IEP, *required* placement away from Dimondale Elementary.

■ Review Officer Sosnowsky's decision is also marked by another critical omission. Although he quoted at length from *Hudson,* he conspicuously excised from the quoted language the very "benefit-to-the-disabled child" test adopted by the Sixth, Fourth and Eighth Circuits, which was the cornerstone of the *Hudson* analysis. The test was established in *Roncker v. Walter,* 700 F.2d 1058, 1063 (6th Cir.1983), where the IDEA's "very strong preference" for "mainstreaming," or education in the least restrictive environment, is recognized. Because the Sixth Circuit's reasoning is so germaine, it is reproduced here at length:

> The Act does not require mainstreaming in every case but its requirement that mainstreaming be provided to the maximum extent appropriate indicates a very strong congressional preference. The proper inquiry is whether a proposed placement is appropriate under the Act. In some cases, a placement which may be considered better for academic reasons may not be appropriate because of the failure to provide for mainstreaming. The perception that a segregated institution is academically superior for a handicapped child may reflect no more than a basic disagreement with the mainstreaming concept. Such a disagreement is not, of course, any basis for not following the Act's mandate.... *In a case where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could be feasibly provided in a non-segregated setting.* If they can, the placement in the segregated school would be inappropriate under the Act. Framing the issue in this manner accords the proper respect for the strong preference in favor of mainstreaming while still realizing the possibility that *some handicapped children simply must be educated in segregated facilities either because the handicapped child would not benefit from mainstreaming, because any marginal benefits received*

*from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the non-segregated setting.*

*Id.* at 1063 (emphasis added; footnote, citation omitted).

*Roncker,* which is still the law of the Sixth Circuit, *see Tullahoma Schools,* 9 F.3d at 460, thus sets forth three factors to consider in determining whether the IDEA preference for education in the least restrictive environment may be overcome.[3] Yet, neither the local hearing officer nor the state review officer applied *Roncker* in evaluating the instant IEP.

Sycamore Elementary is not a segregated facility. Yet, there is no dispute that, as between the two alternatives, Dimondale Elementary, Emma's neighborhood school, with provision of special education services in a resource room, is a less restrictive environment than Sycamore Elementary, with provision of special education services in a categorical classroom. Hence, under the IDEA, Emma would presumptively be placed at Dimondale unless her needs, as identified in the IEP, require placement elsewhere.

█ Hearing Officer Beekman concluded the preponderance of the evidence demonstrated that Emma's unique *educational* needs, as identified in the IEP, could be better addressed in the categorical classroom. He resisted plaintiffs' urging to consider Emma's needs more "holistically." That is, he refused to consider whether placement in the less restrictive neighborhood school might better serve Emma's emotional and social needs. Similarly, Review Officer Sosnowsky concluded the least restrictive environment preference is not mandatory and that the Sycamore Elementary placement was appropriate because of its academic advantages. As observed in *Roncker,* however, the fact that a less inclusive placement may be academically superior is not reason enough to disregard the IDEA's least restrictive environment preference. 700 F.2d at 1063. With reference to the three *Roncker* factors, the Court must therefore determine whether the services that make the more restrictive placement superior could be feasibly provided in a less restrictive setting. *Id.*

First, the record offers no support for the proposition that Emma would not benefit from placement at her neighborhood school, Dimondale Elementary. Quite to the contrary, the trial testimony of plaintiff's expert Alice Udvari–Solner, Ph.D., included her opinion that Emma's IEP goals could be met in a general education setting. She further opined that none of Emma's goal skills could be better taught in a categorical classroom; and to the extent that some skills might be deemed better taught in a categorical classroom, such limited advantages would, on balance, be outweighed by the greater benefits of inclusive education at Emma's neighborhood school. Moreover, Holt's Director of Special Education, defendant Tom West, acknowledged in trial testimony that, indeed, Emma's IEP goals could be met at Dimondale Elementary.[4]

Second, there is little evidentiary support for a finding that the "marginal" benefits of mainstreaming are far outweighed by services which could not feasibly be provided at Dimondale Elementary. Again, Dr. Udvari–Solner reached a contrary conclusion, opining that the marginal

---

3. *Roncker* also recognizes that cost is a proper consideration in determining the appropriateness of a segregated setting "since excessive spending on one handicapped child deprives other handicapped children." *Id.* Cost, however, is not an issue in this case.

4. The present record is thus readily distinguishable from that presented in the *Hudson* case relied on by Review Officer Sosnowsky, where the district court upheld placement in a more restrictive setting because the preponderance of the evidence did not support the claim that the student could achieve satisfactorily in regular education classes. *See Hudson,* 910 F.Supp. at 1304–05.

benefits of Emma's placement at Sycamore Elementary, with special education in the more restrictive categorical classroom, would be far outweighed by the benefits of placement in the less restrictive Dimondale Elementary. Tom West, for his part, acknowledged that Dimondale Elementary represents the less restrictive environment and that all needed special education services could be feasibly delivered there.

Third, the record does not support a finding that Emma would be a "disruptive force" at Dimondale. While Emma's subsequent experience in the general education classroom at Spartan Village Elementary School in East Lansing was marked by occasional minor behavioral problems, she was by no means a "disruptive force" and cannot be said to have compromised the education setting or to have significantly interfered with the learning ability of other students. Moreover, even with respect to the minor behavioral problems she did have, Emma undisputedly showed improvement during the course of the year.

Evaluating the present record under the *Roncker* test thus yields but one conclusion. There is no dispute that services necessary to enable Emma to achieve her IEP goals can feasibly be provided at Dimondale. That is, plaintiffs have carried their burden of showing that Emma's IEP goals do not *require* placement elsewhere. It follows that the IDEA's strong preference for placement in the least restrictive environment must be observed.

The Court is not oblivious to the fact that this conclusion is at odds with the decisions of the IEP Team, the local hearing officer, and the State hearing review officer, all of whom enjoy greater expertise than this Court in matters of special education. Yet, while the Court is obliged to defer to their judgment on matters requiring educational expertise, the present conflict is driven by the law.

The Court does not take issue with the conclusion that special education services might in fact be more effectively and successfully provided to Emma in a categorical classroom. This appears to have been the decisive rationale for the IEP's proposed placement at Sycamore Elementary and for the hearing officers' affirmances. It is a rationale derived from Michigan law's "maximum potential" requirement. Yet, as laudatory as this requirement may seem to be in the abstract, in practice, it eludes precise definition. Moreover, its particular definition in any given case cannot be made without proper respect for Congress' strong preference for placement in the least restrictive environment.

Review Officer Sosnowsky recognized that a school district simply "cannot 'predict' exactly what a student's maximum potential may be." Sosnowsky Decision and Order dated 9/25/99, p. 35. He therefore applied a definition that focuses more on process than end-result in affirming Emma's placement at Sycamore Elementary. He concluded that an IEP that is the product of appropriate process under the IDEA and that affords services designed to "reasonably and consistently challenge the student to achieve his or her goals and objectives" satisfies the maximum potential requirement. *Id.* at 35–36. He stopped short, however, of finding that Emma's placement at Sycamore Elementary was *required* to meet this standard or that the standard could *not* be met at Dimondale Elementary.

The Sixth Circuit has not adopted Review Officer Sosnowsky's "process-centered" definition. It has observed, however, that Michigan's maximum potential standard "may be more precatory than mandatory." *Renner v. Board of Educ. of Ann Arbor Public Schools*, 185 F.3d 635, 645 (6th Cir.1999), quoting *Brimmer v. Traverse City Area Public Schools*, 872 F.Supp. 447, 454 (W.D.Mich.1994). The maximum potential standard " 'does not necessarily require the best education possible' or require 'a model education, adopting the most sophisticated pedagogical methods without fiscal or geographical constraints.' " *Dong*, 197 F.3d at 803,

quoting *Renner*, 185 F.3d at 645. Ultimately, it is a matter of discretion, based on the circumstances of the case. *Renner*, 185 F.3d at 645. Further, the *Renner* court recognized that when each of two competing educational programs meets the child's needs, discretion may legitimately be exercised in favor of the less expensive program. *Id.* at 646.

Here, defendant Holt has expressly disavowed any consideration of costs in its decision to place Emma at Sycamore Elementary. Holt's decision appears genuinely to be based on the opinion that special education services could be *best* delivered to Emma in a categorical classroom. Yet, there is no evidence suggesting that special education services could not also be provided, so as to enable Emma to develop her maximum potential, at Dimondale Elementary in the resource room. In fact, defendant Tom West acknowledged that services enabling Emma to meet her IEP goals could be provided at Dimondale. Further, considering Emma's emotional and social needs, there are substantial reasons—reflected not only in the present evidentiary record, but also in Congress' least restrictive environment preference, and in the Sixth Circuit's *Roncker* admonition to look beyond purely academic considerations in evaluating placement decisions—to believe that placement at Dimondale Elementary would offer superior benefits to Emma.

Therefore, consideration of Michigan's maximum potential requirement does not, under the circumstances of this case, warrant departure from the IDEA presumption favoring placement in the least restrictive environment. Inasmuch as defendant Holt has acknowledged that Dimondale Elementary represents a less restrictive environment than Sycamore Elementary, and the record is devoid of evidence suggesting that services necessary to enable Emma to achieve her IEP

goals cannot be provided at Dimondale Elementary; and the record fails to persuasively show that, as between two competing placements which both meet Emma's needs, one is clearly more likely than the other to enable Emma to develop her maximum potential, the IDEA—under which defendant Holt has accepted funding—requires that Emma be placed at Dimondale Elementary.

Accordingly, the Decision and Order of Review Officer Sosnowsky dated September 25, 1999, will be reversed. Consistent with the Court's August 10, 2000 bench ruling, defendant Holt is required to afford Emma a free appropriate public education designed to meet the goals and objectives established in the April 1999 IEP in a general education setting at Dimondale Elementary School during the 2000–2001 school year, with delivery of special education services in the elementary level resource room.

### B. East Lansing Proceedings

#### 1. *Procedural Defects*

When the East Lansing defendants were added to this action, plaintiffs were aggrieved by East Lansing's December 1999 IEP, which, like Holt's April 1999 IEP, provided for placement of Emma in a general education classroom for a half-day, and in a categorical, or basic, classroom for the second half of the day. In their amended complaint, plaintiffs allege the IEP is violative of the IDEA least restrictive environment requirement and is the product of flawed procedures. Inasmuch as the decision of Review Officer Kraizman has awarded them the substantive relief they sought, i.e., placement of Emma in a general education setting on a full-day basis, their sole continuing claim before this Court is for declaratory judgment that East Lansing employed flawed procedures.[5]

---

**5.** Plaintiffs also observe that this Court's ruling concerning the Holt IEP, requiring that Emma be placed at Dimondale Elementary, has secured their preferred placement remedy

and obviates the need for the Court to make a specific placement ruling in the East Lansing case.

Plaintiffs' claim of a procedural violation is not well-defined. Review Officer Kraizman did not expressly address any alleged procedural violation. Hearing Officer Flaggert summarily rejected plaintiffs' claim of a procedural violation, concluding that Emma's parents were afforded abundant opportunity to participate in the IEP meetings; that plaintiffs' concerns were considered; and that the rationale for the placement proposed was well-explained. In their amended trial brief plaintiffs argue simply that the proposed placement of Emma in a categorical classroom for a half-day was predetermined based on improper factors. Yet, plaintiffs' amended proposed conclusions of law contain no reference to the procedural violation claim.

■ Plaintiffs have the burden of proving a procedural violation of the IDEA by a preponderance of the evidence. *Dong,* 197 F.3d at 800; *Tullahoma Schools,* 9 F.3d at 458. They have utterly failed to carry this burden. Their claim of a procedural violation is therefore rejected.

## 2. *Substantive Issues*

East Lansing's counterclaim, challenging Review Officer Kraizman's decision, implicates the flip-side of the very issues framed in plaintiffs' challenge to the Holt IEP. That is, East Lansing acknowledges that Review Officer Kraizman's decision, providing for full-time placement in a general education classroom, requires Emma to be placed in what may, in the abstract, be considered the least restrictive environment. Yet, because his decision pays no heed to Michigan's maximum potential requirement, and disregards evidence that Emma's needs would be better met by half-day placement in a basic classroom, East Lansing contends Review Officer Kraizman's decision does not afford Emma a free appropriate public education. Further, East Lansing argues that even if full-day placement in a general education setting is deemed appropriate, Review Officer Kraizman's requirement of daily provision of special education services by a teacher consultant with an endorsement in teach-ing the mentally impaired is not supported by the record.

Concerning the former issue, East Lansing's position suffers from the same evidentiary shortfall as does Holt's defense of its IEP. That is, while East Lansing legitimately argues there is reason to believe that special education services might be better afforded to Emma in the basic classroom, the record is devoid of evidence to support the finding (a) that needs and goals identified in Emma's IEP *require* her half-day placement in a basic classroom; or (b) that the needed special education services cannot feasibly be afforded to Emma in a general education setting.

Unlike the hearing officers in the Holt case, Review Officer Kraizman expressly referred to the *Roncker* three-factor test for determining whether the IDEA's least restrictive environment preference was overcome. He ultimately concluded the preference was not overcome, because the record establishes that special education services could feasibly be provided to Emma in the general education classroom, with the assistance of a teacher consultant. Citing *Greer v. Rome City School District,* 950 F.2d 688, 697 (11th Cir.1991), Review Officer Kraizman held the evidence that Emma might make academic progress more quickly in a basic classroom is outweighed by evidence that the general education setting would afford Emma greater benefits in language development and role modeling.

East Lansing objects to this conclusion, arguing the evidence demonstrates that Emma's needs and goals require a half-day placement in a basic classroom and that more than a half-day placement in the general education classroom could be harmful to Emma.

The argument mischaracterizes the record. To be sure, East Lansing personnel touted the virtues of the basic classroom and defended the IEP proposed placement as "best" or "most appropriate" for Emma. The Court does not question the integrity or wisdom of their opinions. Yet, no wit-

ness testified that Emma's needs *required* placement in the basic classroom or that her special education needs could not feasibly be met in the general education classroom. On the other hand, East Lansing witnesses acknowledged that Emma does benefit from mainstreaming and did make progress, academically and socially, during her year of kindergarten in the general education classroom at Spartan Village Elementary. Moreover, Dr. Udvari–Solner and Jill England, Ph.D., an inclusive education consultant, opined that Emma's needs could be successfully met in the general education classroom. In fact, Dr. Udvari–Solner testified in the East Lansing due process hearing that placement in a basic classroom, even for a portion of the day, would be detrimental to Emma's learning. The record thus clearly supports Review Officer Kraizman's determination that Emma can be satisfactorily provided with a free appropriate public education in a general education classroom.

East Lansing contends Review Officer Kraizman's decision should be reversed because he failed to even consider Michigan's maximum potential standard. Citing *Hudson v. Bloomfield Hills Public Schools*, 910 F.Supp. at 1305 n. 14, East Lansing argues that plaintiffs "have no IDEA right to demand for Emma McLaughlin an IEP that exalts least restrictive environment by sacrificing an education that advances Emma McLaughlin's 'maximum potential.'"

*Hudson* does not deal with the maximum potential standard. Rather, it stands for the proposition that the IDEA least restrictive environment requirement must give way where the record demonstrates the child cannot achieve satisfactorily in a general education setting and needs to be placed in a special education basic classroom. *Id.* at 1304–05. *Hudson* was affirmed on appeal, see 108 F.3d 112 (6th Cir.1997), and is clearly rightly decided. It is just as clearly factually distinguishable from the present case, where the record demonstrates that Emma can achieve satisfactorily in the general edu-

cation setting and that her needs do not require placement in a more restrictive setting.

For these reasons and for the reasons stated above, in connection with the Holt case, Michigan's maximum potential standard does not, under the circumstances of the East Lansing case, warrant a departure from the presumption favoring placement in the least restrictive environment. The standard is precatory, not mandatory; a consideration entrusted to the reasonable discretion of state officials. *Renner*, 185 F.3d at 645. Where, as here, the record supports a determination that each of two competing placements would meet Emma's needs—albeit providing different advantages and disadvantages—Review Officer Kraizman cannot be held to have abused his discretion in concluding that Emma's placement in the less restrictive general education classroom is appropriate under the IDEA.

Accordingly, the Court concludes that East Lansing has failed to carry its burden of showing that Review Officer Kraizman erred in determining that Emma is properly placed in a full-day general education setting.

Finally, East Lansing challenges Review Officer Kraizman's order requiring, on a daily basis, the provision of special education services by a teacher consultant with an endorsement in teaching the mentally impaired. East Lansing contends that not even the testimony of plaintiffs' witnesses, Dr. Udvari–Solner and Dr. England, supports such a requirement.

Plaintiffs have made no response to this argument. Indeed, plaintiffs appear not to have even requested this teacher consultant accommodation. The testimony of plaintiffs' expert witnesses acknowledges generally that the special education services Emma needs in the general education setting can be delivered in a variety of ways. In the absence of evidence supporting the specific remedy ordered by Review Officer Kraizman, the Court agrees that the specific mechanics of deliv-

ering special education services to Emma in the general education setting is a matter better left to the East Lansing educators. To the extent Review Officer Kraizman has, in this limited respect, ordered a remedy beyond what is supported by substantial evidence on the whole record, his decision is unreasonable and will be vacated. *See Burilovich,* 208 F.3d at 567 (recognizing that administrative findings may be properly set aside, despite the deference generally owed them, if they are "not justified by a fair estimate of the worth of the testimony of witnesses").

## VI. CONCLUSION

In accordance with the foregoing, plaintiffs Carl and Mary Sue McLaughlin will be awarded judgment in their favor on their IDEA claim challenging the decision of Review Officer William Sosnowsky which upheld the April 1999 IEP of the Holt Public Schools. Review Officer Sosnowsky's decision will be reversed and defendant Holt will be ordered to afford Emma McLaughlin a free appropriate public education designed to meet the goals and objectives established in the April 1999 IEP in a general education setting at Dimondale Elementary School during the 2000–2001 school year, with delivery of special education services in the elementary level resource room.

With respect to plaintiffs' continuing claim for declaratory relief in connection with alleged procedural violations in the East Lansing IEP proceedings, judgment will be entered in favor of defendant East Lansing Public Schools.

Further, counterclaimant East Lansing will be awarded partial judgment in its favor and the decision of Review Officer Sidney Kraizman will be vacated insofar as it requires East Lansing to provide special education services by a teacher consultant with an endorsement in teaching the mentally impaired. In all other respects, however, Review Officer Kraizman's decision will be affirmed.

A judgment order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with the Court's written opinion of even date, **IT IS HEREBY ORDERED:**

**1.** With respect to the claim of plaintiffs Carl and Mary Sue McLaughlin under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, challenging the September 25, 1999 Decision and Order of State Hearing Review Officer William Sosnowsky, upholding the April 1999 individualized education program ("IEP") of defendant Board of Education of Holt Public Schools:

(a) That plaintiffs are hereby **AWARDED JUDGMENT** in their favor;

(b) That Review Officer Sosnowsky's decision is **REVERSED**; and

(c) That defendants Board of Education of Holt Public Schools, Tom Davis and Tom West are hereby **ORDERED** to afford Emma McLaughlin a free appropriate public education designed to meet the goals and objectives established in the April 1999 IEP in a general education setting at Dimondale Elementary School during the 2000–2001 school year, with delivery of special education services in the elementary level resource room; and

**2.** With respect to plaintiffs' IDEA claim against defendant Board of Education of East Lansing Public Schools in connection with the December 1999 IEP for Emma McLaughlin:

(a) That, to the extent plaintiffs' claim is premised on alleged procedural violations, the claim is **DENIED**; and

(b) That plaintiffs' claim for substantive relief is in all other respects **DENIED** as moot, it having been substantially rendered moot by the August 7, 2000 Decision and Order of State Hearing Review Officer Sidney Kraizman; and

**3.** With respect to the counterclaim of defendant East Lansing under the IDEA, challenging Review Officer Kraizman's August 7, 2000 decision, altering the December 1999 IEP;

(a) That counterclaimant East Lansing is **AWARDED PARTIAL JUDGMENT** in its favor, insofar as Review Officer Kraizman's decision includes the requirement that East Lansing provide special education services to Emma McLaughlin by a teacher consultant with an endorsement in teaching the mentally impaired, which requirement is hereby **VACATED;** and

(b) That the counterclaim is in all other respects **DENIED,** as Review Officer Kraizman's decision is in all other respects **AFFIRMED.**